IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-03778-RMR-NRN

SHANNON SWANSON,

Plaintiff,

v.

NORTH LIGHT SPECIALTY INSURANCE COMPANY, an Illinois Corporation,

Defendant.

---

**ORDER ON
PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT
(Dkt. #48)**

---

**N. Reid Neureiter
United States Magistrate Judge**

This matter is before the Court on Plaintiff Shannon Swanson's Motion for Leave to Amend Complaint ("Motion to Amend") (Dkt. #48), referred to me by Judge Regina M. Rodriguez. (Dkt. #49.) Defendant North Light Specialty Insurance Company ("North Light" or "Defendant") responded on December 23, 2021 (Dkt. #54), and Ms. Swanson replied on January 13, 2022. (Dkt. #58.) The Court heard oral argument on February 1, 2022, has taken judicial notice of the Court's file, and considered the applicable Federal Rules of Civil Procedure and case law. Now, being fully informed and for the reasons discussed below, it is hereby **ORDERED** that the Motion to Amend (Dkt. #48) is **GRANTED.**

## BACKGROUND

The Court has already detailed some of the factual and procedural background of this matter in its Order on Defendant's Motion for Leave to Amend Its Answer to Add Affirmative Defenses (Dkt. #43) and will not repeat it except as necessary.

This lawsuit arises from the partial collapse of Ms. Swanson's home in early 2020. According to the operative Complaint, the deck and the rear wall of Ms. Swanson's home collapsed without warning and, as a result, the home became uninhabitable. (*See* Dkt. #4 at ¶¶ 5–8.) North Light is the insurance carrier for Ms. Swanson's homeowner's insurance. Ms. Swanson submitted a claim with North Light on February 3, 2020, but on February 19, 2020, North Light denied coverage for the partial collapse due to the "collapse exclusion" in the insurance policy. After the denial, Ms. Swanson hired an engineer, Mr. Fronapfel, to evaluate her home "in order to create the engineering plans for the shoring" of the home. (Dkt. #48 at 2.)

On June 5, 2020, Ms. Swanson, through counsel, requested that North Light reverse its denial of coverage and fully cover the claim. On July 7, 2020, North Light responded that it refused to change its position. However, the letter also stated that North Light "is always open to considering any new information or evidence that is presented regarding Ms. Swanson's claim" and it was "not necessary for [North Light] to reverse its denial in order to do so." (*See* Dkt. #48-4.)

On July 31, 2020, Ms. Swanson's counsel replied to North Light explaining, in relevant part, that because North Light had denied the claim, "Ms. Swanson is under no obligation to provide additional information to Allstate or sit for an EUO [examination

under oath]." According to Plaintiff, this included the engineering report from Mr. Fronapfel, as he was hired *after* North Light denied Ms. Swanson's claim. On August 12, 2020, North Light responded once again that it stood by its declination of coverage. According to Ms. Swanson, this August 12, 2020 letter did not challenge her position that she had no obligation to provide North Light with additional information after it had denied her claim and refused to re-open the investigation. To date, Ms. Swanson argues, pre-litigation, that she had no legal obligation to sit for an EUO or provide additional information after North Light denied her claim and refused to reverse the decision.

In response to the Complaint, North Light included a failure to cooperate affirmative defense based on Ms. Swanson's refusal to sit for an EUO prior to September 2020 (after North Light had denied Ms. Swanson's claim). (*See* Dkt. #25 at ¶ 6.) Further, on October 28, 2021, the Court granted North Light's Motion for Leave to Amend Its Answer to Add Affirmative Defenses (Dkt. #30), allowing North Light to assert the following defenses:

> 10.   The claims presented are barred, reduced, limited, restricted, excluded and otherwise governed by the provisions of the applicable homeowners insurance policy issued by North Light. The subject policy provides that North Light does not cover any loss or occurrence in which any insured person has concealed or misrepresented any material fact or circumstance.
>
> 11.   Plaintiff engaged in fraud, concealment and/or made material misrepresentations in connection with her claim for insurance benefits which operates to deny coverage under the subject insurance contract and/or constitutes a material breach of the subject insurance contract. Plaintiff knowingly failed to provide or concealed material facts relating to Plaintiff's claimed damages, including without limitation an engineering inspection and/or report by Edward Fronapfel of SBSA that occurred two to six weeks after the date of loss and prior to the filing of this lawsuit. Plaintiff's fraud, concealment and/or material misrepresentations, have caused substantial

> prejudice to Defendant by preventing Defendant from considering material information relevant to Plaintiff's underlying claim for insurance benefits, performing its duty to reasonably investigate Plaintiff's claim, and causing it to be involved in the present lawsuit, including without limitation exposing Defendant to various alleged damages and incurring costs associated with said lawsuit.
>
> 12.   The conduct described in paragraph 11 are violations of the Misrepresentation, Fraud or Concealment clause of the policy and serve to forfeit any and all rights to benefits.

(*See* Dkt. #44 at 11–12.)

Ms. Swanson now seeks leave to amend her Complaint to add new or additional factual allegations concerning (1) North Light's bad faith litigation conduct for asserting a fraudulent concealment defense when Ms. Swanson had no legal duty to provide the allegedly concealed information[1]; (2) the cause of the deck collapse; and (3) the conduct and lack of knowledge of Teresa Craig, North Light's adjuster, which evidences North Light's bad faith and unreasonableness in denying Ms. Swanson's claim.

North Light, for its part, argues that Ms. Swanson's Motion should be denied because she has failed to show good cause and because the proposed amendments are unduly delayed, prejudicial, and futile.

## LEGAL STANDARD

The deadline to amend pleadings was April 26, 2021. (Dkt. #24 at 8.) Allowing amendment would mean modifying the Scheduling Order, which requires good cause. *See Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014) (explaining that once the scheduling order deadline has passed, "a party seeking

---

[1] The Motion to Amend also sought to include allegations concerning North Light's failure to cooperate defense. (*See* Dkt. #48 at 7). However, North Light withdrew this affirmative defense on December 10, 2021 (Dkt. #50), so Ms. Swanson withdrew her request to add allegations regarding the assertion of this defense. (*See* Dkt. #58 at 2.)

4

leave to amend must demonstrate (1) good cause for seeking modification under Fed. R. Civ. P. 16(b)(4) and (2) satisfaction of the Rule 15(a) standard"). In practice, this good cause standard requires the movant to show the scheduling deadlines could not be met despite the movant's diligent efforts. The good cause requirement of Rule 16 may be satisfied, for example, if a plaintiff learns new information through discovery or if the underlying law has changed. If the plaintiff generally knew of the underlying conduct but simply failed to raise the claim, however, good cause is not shown. *Id.*

If good cause to amend the Scheduling Order exists, the Court then turns to Rule 15(a)(2) which states, in relevant part, that "a party may amend its pleading only with the opposing party's written consent or the court's leave." Leave to amend shall be freely granted when justice so requires. *See, e.g.*, *Bellairs v. Coors Brewing Co.*, 907 F. Supp. 1448, 1459 (D. Colo. 1995). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962). However, the court may exercise its discretion to deny a motion to amend upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by previously allowed amendments, or futility of the amendment. *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993).

"A proposed amendment is futile if the complaint, as amended, would be subject to dismissal . . . . The relevant standard in determining whether claims are futile is the same standard that is applied to a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Dorough v. Am. Family Mut. Ins. Co.*, No. 15-cv-02388-MSK-KMT, 2016 WL 1426968, at *2 (D. Colo. Apr. 11, 2016).

5

## ANALYSIS

For the reasons set forth below, the Court will modify the Scheduling Order to permit Ms. Swanson to amend her Complaint to include a bad faith claim based on North Light's litigation conduct and to add additional factual allegations concerning the collapse of her home and North Light's adjuster's conduct.

### I.     Bad Faith Allegations for North Light's Litigation Conduct

First, with respect to the bad faith allegations concerning North Light's litigation conduct, the Court finds good cause to modify the deadlines in the Scheduling Order to permit an amended complaint. These bad faith allegations are asserted in response to North Light's fraudulent concealment defense, which was only added to the case after the Court granted North Light's motion seeking leave to amend its answer on October 28, 2021. (*See* Dkt. ## 30, 43.) Given that the affirmative defense formally became part of this case at the end of October 2021, Ms. Swanson could not have made this bad faith claim prior to the April 2021 pleading amendment deadline. Ms. Swanson has been diligent in seeking leave to amend—she filed her Motion to Amend on December 3, 2021, five weeks after the affirmative defense was officially asserted in the case.

North Light's argument that Ms. Swanson should have moved to assert a bad faith claim in August 2021, when North Light first filed its Motion for Leave to Amend its Answer to Add Affirmative Defenses, is unpersuasive. Though Ms. Swanson was on notice that North Light intended to assert the fraudulent concealment defense, she had no reason to file her Motion to Amend before the Court allowed North Light to assert the affirmative defense. Such motion would have been premature and potentially superfluous. If the Court had denied North Light's request to add the affirmative

defense, Ms. Swanson's motion would have been moot. The Court discourages the filing of needless motions. Because the need for amendment became apparent only after the Court granted North Light leave to assert the concealment defense, and Ms. Swanson diligently filed her Motion to Amend only five weeks after that Order, the Court finds good cause to modify the scheduling order with respect to the proposed bad faith claim.[2]

Next, the Court finds there is no undue delay. As previously set forth, Ms. Swanson filed her Motion to Amend only five weeks after the fraudulent concealment defense was formally added to the case. Further, North Light has not argued that Ms. Swanson request for amendment is made in bad faith.

With respect to prejudice, North Light argues that the proposed allegation focuses on counsel's conduct, rather than North Light's. This argument is more appropriately addressed in the context of futility and, as explained more fully in that section, the Court rejects it. Further, North Light argues that it "did not endorse an expert to assert that the pleading of affirmative defenses cannot legally constitute evidence of unreasonable conduct," and the rebuttal deadline has already passed. (Dkt. #54 at 7.) Thus, North Light argues it has no ability to contest the bad faith allegations through expert testimony. To the extent that expert testimony is required, any prejudice

---

[2] Ms. Swanson also argues that good cause exists to allow the late amendment because she "did not want to assert allegations of bad faith with respect to the concealment defense unless and until an expert opinion supported that allegation" and, on October 25, 2021, she obtained an expert report from Doug Meier, Esq., to that effect. (Dkt. #48 at 8.) The Court does not rely on this argument in making its good cause determination. However, it is noteworthy that Ms. Swanson has an expert report opining that North Light's conduct because, as set forth later in this Order, North Light argues it is prejudiced in its ability to rebut Mr. Meier's report.

to North Light can be mitigated by allowing an extension of the rebuttal expert deadline. If North Light does intend to find an expert to rebut Mr. Meier's opinion, it should seek an extension of the rebuttal deadline as soon as practicable and the Court will entertain such a motion.

However, expert testimony is not the only means of challenging the proposed allegations. Discovery does not close in this matter until March 17, 2022. There is ample time for North Light to depose Mr. Meier, Ms. Swanson's expert witness, concerning his opinion that North Light's assertion of the affirmative defense constitutes bad faith. The dispositive motion deadline is not until April 26, 2022. North Light is free to attack the merits of this theory of recovery through a motion for summary judgment. It can also attack Ms. Swanson's expert's opinion through a Rule 702 motion. Thus, the Court finds that there is no undue prejudice as would bar Ms. Swanson's requested amendment.

Finally, the Court considers whether Ms. Swanson's proposed amendment concerning North Light's litigation conduct is futile. According to North Light, Ms. Swanson's allegations concerning the assertion of a fraudulent concealment defense actually relate to North Light's counsel's conduct, not the conduct of North Light. An attorney's assertion of an affirmative defense, North Light argues, is attorney litigation conduct that cannot support a claim under Colo. Rev. Stat. § 10-3-1116 or the common law. (*See* Dkt. #54 at 7–10.)

The Court has serious doubts that Ms. Swanson's proposed allegations challenge counsel's litigation conduct, rather than North Light's. Nowhere does Ms. Swanson explicitly reference the conduct of counsel. Instead, the conduct Ms. Swanson complains of is the assertion of an affirmative defense which, even if done through an

8

attorney, is the conduct of the client. Indeed, under the Rule 8(c)(1), "a *party* must affirmative state any . . . affirmative defense. . . ." (emphasis added). And, as Ms. Swanson noted, North Light's motion to amend its affirmative defenses stated: "*Defendant* seeks leave to file its Amended Answer to Plaintiff's Complaint to add the Affirmative Defenses of fraud/misrepresentation/concealment." (*See* Dkt. #30 at 9.) Counsel certainly could not have asserted this affirmative defense without North Light's knowledge and approval. It is North Light that is claiming that the insured's failures to provide additional evidence or sit for an examination under oath are breaches of the contract of insurance. If North Light wanted to overlook these alleged failures by the insured and stand on its denial based on the collapse exclusion, then it could do so. Instead, North Light is taking a different position. This is not the conduct of counsel. It is a conscious decision by North Light.

Regardless, as the Court previously explained when ruling on North Light's motion to amend its affirmative defenses, the Court declines to consider any futility argument at this stage in the proceeding. Here, the proposed amendment with respect to North Light's litigation conduct is not patently futile on its face. Judge Ebel noted of a defendant's extensive futility argument raised in opposing amendment: the "futility argument seems to place the cart before the horse. Rather than force a Rule 12(b)(6) motion into a Rule 15(a) opposition brief, the defendants may be better served by waiting to assert Rule 12 motions until the operative complaint is in place." *Gen. Steel Domestic Sales, LLC v. Steelwise, LLC*, Civ. No. 07-cv-01145, 2008 WL 2520423, at *4 (D. Colo. June 20, 2008); *see also Agere Sys. Guardian Corp. v. Proxim, Inc.*, 190 F. Supp. 2d. 726, 736 (D. Del. 2002) ("[T]his court hesitates to undergo a rigorous 12(b)(6)

9

analysis of the claims alleged to be futile based on less than complete briefing, especially in light of the deferential standard under which the court must consider 12(b)(6) motions. The court believes the better course is to liberally allow amendments that state a colorable claim and defer judgment as to whether they survive a motion to dismiss for failure to state a claim until such time when that motion is raised."). Rather than forcing a motion to dismiss or motion for summary judgment argument into the response to the Motion to Amend, North Light is better served by having an opportunity to fully brief the merits of the allegations upon appropriate motion.

In light of the foregoing, Ms. Swanson will be permitted to assert the additional factual allegations concerning North Light's conduct during litigation; namely, it's assertion of the fraudulent concealment affirmative defense. The Court notes that these allegations do not assert any new claims, they simply provide additional facts to bolster Ms. Swanson's existing claims for bad faith breach of an insurance contract and violation of Colo. Rev. Stat. §§ 10-3-1115 and -1116. Whether the newly alleged facts concerning North Light's litigation conduct can, as a matter of law, support such claims is not appropriately before the Court on Ms. Swanson's Motion to Amend.

## II.     Factual Allegations Related to the Cause of the Deck Collapse

Ms. Swanson also seeks to add the following factual allegation concerning the deck collapse:

> the deck was found to be substantially outboard of the Swanson Home in the debris pile following the February 1, 2020 incident. An engineer retained by Ms. Swanson has concluded in his October 25, 2021 report that the likelihood of the deck moving out laterally from the Swanson Home likely initiated the incident and was the likely contributor to the failure of the east rear wall and south side walls.

(Dkt. #48-9 at 3.)

10

The Court finds good cause to permit this amendment. The request for amendment was made shortly after Ms. Swanson obtained an expert report, and the amendment explicitly references this report. If this was the sole amendment being made, the Court might find that the exercise of amending the complaint and requiring North Light to file a new answer solely to address information that arose in discovery is unnecessary, and would instead direct Ms. Swanson to assert these facts in the proposed Final Pretrial Order. However, because the Court is allowing other amendments and finds that this amendment does not change the scope of this litigation, the Court finds that the amendment concerning the cause of the deck collapse should be permitted.

Further, the Court does not find any undue delay, bad faith, or prejudice. Notably, this proposed amendment does not assert any new claim or theory of recovery. Instead, Ms. Swanson seeks to clarify allegations from her initial complaint now that she has the benefit of an expert opinion. In that sense, the requested amendments do not materially change the scope of this suit and Defendants are not unduly prejudiced. "[T]he addition of potentially clarifying facts does not unfairly affect defendant's ability to defend this lawsuit." *See Galvan v. First Vehicle Servs., Inc.,* No. 19-CV-02143-PAB-KMT, 2020 WL 1166857, at *4 (D. Colo. Mar. 11, 2020). Indeed, North Light does not argue that this amendment is prejudicial.

### III.     Factual Allegations Related to North Light's Adjuster, Ms. Craig

Finally, Ms. Swanson seeks to add factual allegations concerning Ms. Craig's lack of knowledge about the difference between dead and live loads, and

11

her misrepresentation of "a pertinent fact and coverage matter to Ms. Swanson." (Dkt. #48 at 6.) These facts, Ms. Swanson argues, bear on whether the claim was denied unreasonably or in bad faith. (*See id.* at 6, 10.)

These allegations could not have been asserted by the April 26, 2021 pleading deadline, as Ms. Craig's deposition, upon which these allegations are based, did not take place until August 25, 2021. (*See* Dkt. #48-11.)

The Court finds that there was some delay in seeking amendment after the deposition. Ms. Swanson claims that "putting all of those pieces together" (concerning Ms. Craig's lack of knowledge) required the assistance of Mr. Meier, who opined in his October 25, 2021 report that North Light committed bad faith conduct. (Dkt. #48 at 9.) Ms. Craig denied Ms. Swanson's claim based on the collapse exclusion, which has an exception for the "weight of persons, animals, equipment, or contents," which Ms. Swanson asserts are live loads. Thus, Ms. Craig did not properly analyze whether an exception applied to the collapse exclusion.

The Court is not entirely convinced that Mr. Meir's expert report was necessary to conclude that an insurance adjuster who does not understand the difference between live and dead loads, and did not communicate with an engineer concerning the difference, might have acted unreasonably in denying Ms. Swanson's claim. Regardless, though there was some delay, the Court finds that any such delay is not undue. *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1205 (10th Cir. 2006) (explaining that lateness itself does not justify denial of an amendment, but undue lateness may). Nor is there any prejudice to North Light if

this amendment is permitted—indeed, North Light does not argue that this amendment is prejudicial in any way. North Light's arguments concerning the substance of Ms. Swanson's expert's opinion and North Light's own engineering report are better left to summary judgment or a Rule 702 motion.

## CONCLUSION

In light of the foregoing, North Light's Motion for Leave to Amend Its Answer to Add Affirmative Defenses (Dkt. #48) is **GRANTED**. The First Amended Complaint and Jury Demand (Dkt. #48-9) is accepted for filing as of the date of this Order. North Light shall answer or otherwise respond to the First Amended Complaint in accordance with Rule 15(a)(3).

In allowing Ms. Swanson's First Amended Complaint, the Court does not make any findings concerning the merits of the new factual allegations. To reiterate what the Court stated when ruling on North Light's request to for leave to add affirmative defenses: the ultimate question of whether North Light acted unreasonably and in bad faith (whether pre-litigation or throughout the course of litigation), or Ms. Swanson concealed material information and committed fraud under the policy, is not before this Court. This case will proceed with Ms. Swanson's newly asserted factual allegations and North Light's previously allowed fraudulent concealment affirmative defense. The parties can substantively address the asserted claims and defenses through dispositive motions or at trial.

**Rule 72(a) of the Federal Rules of Civil Procedure provides that when a pretrial matter not dispositive of a party's claim or defense is referred to a Magistrate Judge to hear and decide, the Magistrate Judge must issue a written**

13

**order stating the decision. Within fourteen (14) days after service of a copy of this Order, any party may serve and file written objections with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(a). Failure to make any such objection will result in a waiver of the right to appeal the non-dispositive order.** *See Sinclair Wyo. Ref. Co. v. A & B Builders, Ltd.***, 989 F.3d 747, 782 (10th Cir. 2021) (firm waiver rule applies to non-dispositive orders).**

Dated this 18th day of February 2022.

BY THE COURT:

N. Reid Neureiter
United States Magistrate Judge